IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALINA KHIMMAT,<br><br>        Plaintiff<br><br>v.<br><br>WELTMAN, WEINBERG AND REIS CO., LPA,<br><br>        Defendant. | Case No. 2:21-cv-02944-JDW |

### MEMORANDUM

When it comes to statutes, one hopes Congress channels Dr. Seuss: "I meant what I said and I said what I meant." Dr. Seuss, Horton Hatches The Egg 21(2d ed. 1968). Unfortunately, the Mad Hatter teaches that meaning what you say and saying what you mean are "not the same thing a bit." Lewis Carroll, Alice's Adventures In Wonderland 98 (VolumeOne Publishing) (1998). And sometimes, a statute might say something that Congress did not necessarily mean. But courts have to start with the presumption that Congress meant what it said. So when a statute says something, a court must give effect to that enactment. And if it turns out that's not what Congress meant, then it will be up to Congress to fix it.

At bottom, this dispute is about whether Congress meant what it said in the Fair Debt Collection Practices Act. It used language that, on its face, bars debt collectors from communicating information about debtors to letter vendors. Defendant Weltman, Weinberg, and Reis Co., LPA argues that Congress could not have meant what it said and asks the Court to interpret the statute in the way

that Weltman thinks Congress must have meant. But the Court must assume that Congress meant what it said, and it will enforce the statute that way. For the reasons that follow, the Court will therefore deny Weltman's motion for judgment on the pleadings.

**I.   BACKGROUND**

Alina Khimmat had a Citibank credit card account that was in default. Citibank hired Weltman to collect the debt. Weltman sent Ms. Khimmat a letter seeking to collect the debt. To send that letter, Weltman hired a letter vendor and provided that vendor with an electronic file containing Ms. Khimmat's name and address, her status as a debtor, details of the debt, and other personal information.

Ms. Khimmat filed a complaint on July 1, 2021, asserting that Weltman violated Section 1692c(b) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(b), by transmitting information to the letter vendor. On November 9, 2021, Weltman filed a motion for judgment on the pleadings. That Motion is now ripe.

**II.   LEGAL STANDARD**

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court can grant a Rule 12(c) motion "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." Fed Cetera, LLC v. Nat'l Credit Servs., Inc., 938 F.3d 466, 470 n.7 (3d Cir. 2019) (quotation omitted). A Rule 12(c) motion "is analyzed under the same standards that apply to a Rule 12(b)(6) motion[,]" construing all

2

allegations and inferences in the light most favorable to the nonmoving party. Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (quotation omitted).

## III.   DISCUSSION

### A.   The FDCPA's Plain Meaning

"It is the cardinal canon of statutory interpretation that a court must begin with the statutory language." In re Philadelphia Newspapers, LLC, 599 F.3d 298, 304 (3d Cir. 2010), as amended (May 7, 2010). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" Id. (quoting Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992)); see also Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 202 (3d Cir. 1998) ("Where the statutory language is plain an unambiguous, further inquiry is not required . . ..").

To determine whether statutory language is ambiguous, the Court must "read the statute in its ordinary and natural sense." Id. (quotation omitted). In doing so, the Court must take care to apply the ordinary meaning of the terms of the statute as they existed "at the time of its enactment." Bostock v. Clayton Cty., Georgia, 140 S. Ct. 1731, 1738 (2020); see also McGirt v. Oklahoma, 140 S. Ct. 2452, 2468 (2020) (in interpreting Congressional enactment, a court's task is to "ascertain and follow the original meaning of the law"). Courts "look to dictionary definitions to determine the ordinary meaning of a word." Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 306 (3d Cir. 2020) (quotation omitted).

3

"A provision is ambiguous only where the disputed language is 'reasonably susceptible of different interpretations.'" Philadelphia Newspapers, 599 F.3d at 304 (same).

Much of the parties' dispute turns on their competing interpretations of Section 1692c(b). Under that part of the FDCPA, with certain exceptions, a "debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). The Parties' dispute turns on the interpretation of three terms in that statutory section: (1) "communicate;" (2) "in connection with the collection of any debt;" and (3) "with any person."

      **1.**      **"Communicate"**

Although the FDCPA does not define "communicate," it defines a "communication" as the "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The statute does not define "medium," so the Court gives that word its ordinary meaning: "a channel, method, or system of communication, information, or entertainment." Webster's Third New International Dictionary 1403 (1961). There is no question that Weltman conveyed information to its letter vendor. The information—including Ms. Khimmat's name, status as a debtor, and details about the debt—was

4

information regarding a debt. And Weltman transmitted the information via an electronic channel—a medium.

Weltman asks the Court to define "medium" as a "person through whom a purpose is accomplished." (ECF No. 12-1 at 6 (quoting Webster's Third International Dictionary 1403).) That definition would define a "medium" as a person, in this case the letter vendor. But the Court concludes that Congress intended the word "medium" to refer to the mechanical means of communication—a telephone, telegram, or, in more modern terms, email or file transfer. That definition comports with common sense because, in the context of a definition of "communication," the word "medium" most likely refers to the means of transmission, rather than to an intermediary that might (or might not) be present. Weltman's proposed definition introduces its own interpretive problem. Section 1692c(b) prohibits communication in connection with the collection of any debt "with any person other than," among others, "the consumer [or] his attorney."  Under Weltman's proposed definition, the consumer's attorney is a medium—a person through whom a purpose (the collection of a debt) is accomplished. But if a consumer's attorney were a "medium," it would render § 1692c(b)'s "with any person other than" clause unintelligible. The Eleventh Circuit reached the same conclusion in <u>Hunstein v. Proferred Collection and Mgmt. Svcs., Inc.</u>, 17 F.4th 1016, 1033 n.13 (11th Cir. 2021), and the Court finds its reasoning

persuasive.[1] It therefore concludes that Weltman's transmission of information to its letter vendor was a communication under the FDCPA.

### 2. "In connection with the collection of any debt"

The phrase "in connection with" is a broad one that implies some relationship or association, nothing more. See Webster's Third New International Dictionary at 481 (1961) (defining "connection"). The phrase implies a "vague, loose connective." Bryan A. Garner, Garner's Dictionary of Legal Usage 440 (3d ed. 2011); see also Hunstein, 17 F.4th at 1034. Weltman's transmission to its letter vendor had a relationship or association with Weltman's effort to collect a debt from Ms. Khimmat, so it qualifies under the statute.

Weltman argues that the Court should adopt a narrower interpretation of "in connection with" to account for other provisions of the FDCPA that prohibit communications "regarding" the collection of a debt or "with respect to" the collection of a debt. See 15 U.S.C. §§ 1692c(c), 1692f(7). By their terms, both of those sections deal only with communications directly between a debt collector and a consumer. Those phrases only demonstrate that the FDCPA regulates communications between the debt collector and the consumer about debt collection, as opposed to some other subject. In addition, Weltman's argument rests on the assumption that the phrase "in connection with" is narrower than "regarding" or "with respect to." The opposite is true. "Regarding" and "with

---

[1] The Eleventh Circuit has vacated the decision in Hunstein pending a rehearing *en banc*, but the *en banc* hearing will focus on standing questions that are not at issue in this case.

respect to" imply a direct link, but "in connection with" means a looser relationship.

Third Circuit cases suggest that the link need not be as narrow as Weltman suggests. In the Third Circuit, "'opening communication in an attempt to collect [the debtor's defaulted loan]' . . . qualifies as a communication in connection with an attempt to collect a debt." Simon v. FIA Card Servs., N.A., 732 F.3d 29, 266 (3d Cir. 2013). And "a letter that is not itself a collection attempt, but that aims to make ... such an attempt more likely to succeed, is one that has the requisite connection." Id. Weltman concedes that the communication between it and the letter vendor was a communication to facilitate the collection of outstanding debts. So while it did not make a demand for outstanding debts, that alone is not dispositive, and commonsense dictates that Weltman made the communication in connection with the collection of a debt.

Given both the statutory structure and the Third Circuit's holding in Simon, the Court rejects Weltman's invitation to adopt interpretations at odds with the statutory language. First, Weltman argues that only a communication that seeks to motivate a consumer to pay a debt is a communication in connection with a debt. Section 1692c(b) says otherwise, though. It contemplates communications with a creditor or the creditor's attorney, a consumer reporting agency, and the debt collector's attorney. Communications with those groups will not demand payment or motivate a consumer to pay a debt. Instead, they are communications that have a connection to the debt. Weltman's proposed

7

interpretation would render superfluous the statute's exceptions for communications with these groups. In addition, Weltman's proposed interpretation would read the words "in connection with" out of the statute and limit the statute's reach to communications to "collect any debt." Those are not the words Congress used, though, and the Court must assume "in connection with" adds some meaning beyond just the actual collection activity.

Second, Weltman urges the Court to adopt either (a) a multifactor test that the Sixth Circuit used in an unpublished decision (see Goodson v. Bank of Am., N.A., 600 F. App'x 422, 431 (6th Cir. 2015)) or (b) some courts' focus on the "animating purpose" of the communication to determine whether it was in connection with the collection of a debt (Grden v. Leikin Ingebr & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011).) Those cases are at odds with Simon. They also focus on a different provision of the FDCPA, Section 1692e, whose context suggests that it has a different focus than Section 1692c(b). And, in any event, because the phrase "in connection with the collection of a debt" has a clear meaning in Section 1692c(b), the Court need not resort to extratextual factors that are more likely to muddy the waters than clarify them. See Hunstein, 17 F.4th at 1037.

### 3. "With any person"

Section 1692c(b)'s prohibition on communications with "any person," coupled with its exception for certain third parties like lawyers and consumer reporting agencies demonstrates that the phrase refers to any third party,

including a letter vendor. Weltman makes three arguments to the contrary, but each fails.

*First*, Weltman argues that its letter vendor was its agent, which in Weltman's view means that the Weltman and the letter vendor were one and the same. The statute does not support that argument. As discussed, Section 1692c(b) provides six exceptions to its prohibition on communications in connection with a debt, for the consumer, his attorney, a consumer reporting agency, the creditor, the attorney of the creditor, and the attorney of the debt collector. Three of these exceptions are for attorneys, who have an agency relationship with their clients. Congress's explicit reference to some types of agents—attorneys—and not others indicates that Congress expected the statute to apply to agents unless a specific exemption applied. Otherwise, Congress would not have needed to exempt those agents in the first place. And by specifying some, the doctrine of *expressio unius est exclusion alterius* teaches that Congress intended to exclude other agents from the exemption. See Keeley v. Loomis Fargo & Co., 183 F.3d 257, 266 (3d Cir. 1999).

Even if Section 1692c(b)'s exceptions applied to agents other than those listed in the statute, the Court has no basis to conclude that Weltman's letter vendor was an agent. An agency relationship exists when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent. See Covington v. Int'l Ass'n of Approved Basketball Offs., 710 F.3d 114, 120 (3d Cir. 2013). Weltman states that debt collectors "contract with

these third-party [letter] vendors who exist solely to assist the principal debt collector." (ECF 12-1 at 16.) But Weltman has not asserted that it directed or had control over the manner the letter vendor would print and mail its letters. Because Weltman has made no showing of the relationship between it and the letter vendor, the Court cannot conclude that an agency relationship existed.

*Second*, Weltman argues that the Supreme Court's decision in <u>TransUnion v. Ramirez</u>, 141 S.Ct. 2190 (2021), constitutes "mandatory authority" that is "dispositive of the legal issue" in this case. (ECF No. 12-1 at 12.) In <u>Ramirez</u>, the Court considered whether an inaccurate credit report that a consumer reporting agency did not disclose to a third party caused harm. In a footnote, the Court noted that the plaintiffs argued for the first time before the Supreme Court that publication to a letter vendor caused harm. The Court held that the plaintiffs had "forfeited" that argument by not raising it before. <u>See</u> <u>Ramirez</u>, 141 S.Ct. at 2210 n.6. The Court then noted that courts do not treat intra-company disclosures and then said, "Nor have they necessarily recognized disclosures to printing vendors as actionable publications." <u>Id.</u> The language does not provide the mandate that Weltman suggests.

The language on which Weltman relies is dicta, coming after the Court concluded that the plaintiffs had forfeited the argument. While the Court does not view dicta from the Supreme Court lightly, the language does not constitute binding authority. <u>See</u> <u>Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery</u>, 330 F.3d 548, 561 (3d Cir. 2003). Nor does the

language in Ramirez compel dismissal here. In Ramirez, the Supreme Court ruled on Article III standing, not the interpretation of the FDCPA. And in Ramirez, the Court suggests that if a letter vendor read, and did not merely process, the information, then a plaintiff might suffer an injury. At this stage of the proceedings, the Court infers from the Complaint that Weltman's letter vendor read the information that Weltman provided. Discovery might show otherwise, and the parties can return to the issue then, if appropriate.

*Third*, and finally, Weltman urges the Court to look past Section 1692c(b)'s language in furtherance of the "statutory purpose." (ECF No. 12-1 at 12-14.) Of course, the best insight into any statute's purpose is the words that Congress used. When Congress has used clear language, as it has here, a court should not set that language aside to effectuate what it thinks Congress's purpose was, except in the most exceptional of circumstances. Weltman has not shown those circumstances to be present. The FDCPA has a section that addresses its purpose and that identifies the "invasion [] of individual privacy" as one of the harms against which the statute is directed. 15 USC § 1692(a). Disclosure to a letter vendor is a form of invasion of individual privacy. Whether it is one that Congress intended to forbid is beyond this Court's power to say. But that statement of purpose means that the Court's reading of the statute is consistent with the language and purpose, so circumstances do not exist to justify setting aside the statutory language in a quest to divine its purpose.

### B. Weltman's Attempts To Negate The Statute's Plain Meaning

#### 1. First Amendment

The FDCPA restricts debt collectors' ability to engage in certain types of speech. The speech in question is commercial speech, which is "expression related solely to the economic interests of the speaker and its audience." Greater Philadelphia Chamber of Com. v. City of Philadelphia, 949 F.3d 116, 137 (3d Cir. 2020). Courts apply intermediate scrutiny to restrictions on commercial speech. See id. Under that standard, the government must demonstrate "a proportionate fit between a substantial interest and its legislative attempt to advance that interest." Id. The government has a substantial interest in limiting the number of people exposed to knowledge that a consumer is a debtor, and the FDCPA proportionately advances this interest. The statute restricts communications in connection with the collection of a debt, but with sufficient exceptions to allow a debt collector to continue to collect. The FDCPA satisfies intermediate scrutiny and is permissible under the First Amendment. Because the statute passes Constitutional muster, Weltman's constitutional avoidance argument becomes irrelevant.

#### 2. Policy concerns

Weltman argues that the Court must adopt its interpretation of the FDCPA to avoid "upend[ing] a common practice" in the industry. (ECF No. 12-1 at 27.) That might be right. But policy is Congress's realm, not the Court's. The statute's

language is clear. If Congress passed a problematic statute, then Weltman's remedy is with Congress.

### 3. Regulatory guidance

Weltman argues that the FTC and CFPB have approved the use of letter vendors, but a close reading of their guidance shows otherwise. Weltman makes much of the fact that the FTC and CFPB have not taken action against a debt collector for using a letter vendor, but that only tells the Court that it is not an issue of importance to those agencies. Weltman also points to CFPB guidance that acknowledges that it is "appropriate for … debt collectors [] to outsource certain functions to service providers to conserve resources and rely on the expertise from those providers that would not otherwise be available without significant involvement." See CFPB Compliance Bulletin and Policy Guidance; 2016-02, Service Providers.[2] But in that same document, the CFPB states that "the mere fact that a supervised bank or nonbank enters into a business relationship with a service provider does not absolve the supervised bank or nonbank of responsibility for complying with Federal consumer financial law to avoid consumer harm." Id. Weltman directs the Court's attention to CFPB Regulation F and the associated commentary in the Federal Register to support its position that a debt collector may communicate with a letter vendor in connection with the collection of any debt. Regulation F just permits a debt collector to use a vendor's address as its

---

[2] Available at https://files.consumerfinance.gov/f/documents/102016_cfpb_OfficialGuidanceServiceProviderBulletin.pdf (last downloaded December 5, 2021)

13

own when disclosing its mailing address to consumers. See 12 C.F.R. § 1006.34(c)(4)(iii). A debt collector receiving information from a consumer through a letter vendor is not the same as a debt collector communicating information to or through a letter vendor. Furthermore, Weltman's citation to the Federal Register is of no legal significance, and owed no deference, as it is not a rule, but only the reasoning behind the CFPB's adoption of Regulation F. 86 FR 5766 at 5845.

Finally, the FTC guidance cited by Weltman does not address the legality of letter vendors at issue in this case. It notes support for a debt collector's agent providing notice to a consumer, and similar support for phone and telegraph company employees. Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02. The Court has already concluded letter vendors are not agents of a debt collector, and phone and telegraph companies are wire-based, regulated utilities, plainly distinguishable from private letter vendors.

Consequently, because the agencies tasked with regulating and enforcing the FDCPA have not addressed the use of letter vendors by debt collectors in any legally significant way, and because the statutory language is not subject to a different reading, the Court will afford no deference to the indeterminate actions of the CFPB and FTC.

## IV. CONCLUSION

The language of the FDCPA does not permit communications to third parties, including letter vendors. The Court must take Congress at its word. It will therefore deny Weltman's Motion for judgment on the pleadings. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

February 7, 2022